IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RAYMOND LOPEZ,<br><br>            Petitioner,<br><br>vs.<br><br>JAMES WALKER,[1] Warden, California<br>State Prison, Sacramento,<br><br>            Respondent. | No. 2:08-cv-00598-JWS<br><br>MEMORANDUM DECISION |

Petitioner Raymond Lopez, a state prisoner appearing *pro se*, has filed a petition for

habeas corpus relief under 28 U.S.C. § 2254. Lopez is presently in the custody of the California

Department of Corrections and Rehabilitation, incarcerated at the California State Prison,

Sacramento. Respondent has answered, and Lopez has replied.

## I. BACKGROUND PRIOR PROCEEDINGS

Following a jury trial in the Sacramento County Superior Court, Lopez and a co-

defendant, Titus Wilson, were found guilty of two counts of attempted murder with

premeditation (Cal. Penal Code §§ 187(a), 664(a)), with enhancements for personally

discharging a handgun causing great bodily injury (Cal. Penal Code §§ 12022.5(a)(1),

12022.53(b), (c), (d), and (e)(1)) and that the crimes were committed for the benefit of a criminal

street gang (Cal. Penal Code § 186.22(b)(1)). Both Lopez and Wilson were found to be

principals. Lopez was found to be the shooter in one count, and his co-defendant, Wilson, the

---

[1] James Walker, Warden, California State Prison, Sacramento, is substituted for Robert A. Horel,
Warden, California State Prison, Pelican Bay. Fed. R. Civ. P. 25(d).

shooter in the other count.  The trial court sentenced Lopez to consecutive terms of 40 years to

life on each count, including enhancements, for an aggregate prison term of 80 years to life.

Lopez timely appealed to the California Court of Appeal, Third District, which affirmed his

conviction and sentence in an unpublished reasoned decision,[2] and the California Supreme Court

summarily denied review without comment or citation to authority on February 21, 2007.  Lopez

timely filed his petition in this court on March 1, 2008.

As recited by the California Court Appeal, the facts of the crime are:

A week before the shootings, Anthony Ciancio saw Wilson and Lopez riding Sacramento's Regional Transit Light Rail.  Another person also saw Wilson and Lopez and that person said, "Norcade Piru," referring to the defendants' gang affiliation.  Wilson and Lopez confronted the man and said, "Man, don't be saying Norcade Piru.  It's East Side Piru."

On July 31, 2003, Michael Fielding, who was 18 years old and had been affiliated with a gang in the past, was staying with Michael Young at the residence of Young's relatives on Norcade Circle in Sacramento County.  Around midnight or one o'clock the next morning, August 1, Wilson and Lopez arrived at the residence.  Wilson asked to see Michael Young.  Fielding told them Young was not there.  Lopez asked for a drink of water, and Fielding got some water for them.  Fielding told Wilson and Lopez to be quiet because the residents were sleeping.  Wilson and Lopez stayed at the residence for 15 to 25 minutes, then left.

Minutes later, in the dark of the early morning, Ciancio saw Wilson and Lopez on the street.  As the defendants approached Ciancio, he tried to walk away.  Wilson said to Ciancio, "Where you from?"  Believing the question to be an inquiry into his gang affiliation, Ciancio replied he was from Oak Park and he did not "gang bang."  Wilson responded that he was Piru.  Wilson asked if Ciancio was a South Side Crip, and Ciancio said he was not.

Lopez moved toward Ciancio and reached for a gun in his waistband.  As soon as Ciancio saw Lopez reaching for the gun, he swung at Lopez, hitting him in the chin.  As Ciancio turned and ran, Wilson said, "Shoot that mother fucker."  Lopez shot Ciancio in the back.  The bullet went through his torso and out the front.  Ciancio made it to a relative's residence.  He received treatment and, at the time of trial, wore a colostomy bag.

---

[2] *People v. Wilson*, 2006 WL 3004206 (Cal. App. October 23, 2006).

Wilson and Lopez ran back to the residence where Fielding was staying and banged on the door.  Fielding opened the door and asked, "Are you guys running from the police?  Cuz' if you are, you can't do that over here."  Lopez looked like he had been in a fight, and Wilson said Lopez had "got his ass whooped."  Wilson and Lopez sat on the couch.  Lopez laid down on the couch, with his head on Fielding's pillow, and appeared to be nodding off, so Fielding told him, "That's where I'm laying at. You can't, you can't go to sleep.  You got to go."  Lopez asked for another drink of water, but Fielding told Lopez to get it himself or told Wilson to get it for Lopez.  Wilson asked to use the bathroom, and Fielding told him to go ahead but to be quiet because the residents were sleeping.

While Lopez was in the kitchen getting a drink of water, Wilson walked down the hall.  Fielding heard the sound of a gun being cocked and became nervous.  Wilson returned to where Fielding was and said he was leaving.  When Fielding opened the door, Wilson shot Fielding six times-twice in the chest, twice in the stomach, and one time in each arm.   During the shooting, Lopez was still in the kitchen.  Fielding testified Lopez looked "dumb" or "ignorant."  Wilson said, "Come on Nigga, we're leaving."  Lopez ran past Fielding and left the residence with Wilson. Fielding survived the shooting but is disabled from the effects of the shooting.[3]

## II.  GROUNDS RAISED/DEFENSES

In his petition, Lopez raises six grounds for relief:  (1) the trial court erroneously rejected his *Batson* motion;[4] (2) insufficiency of the evidence to support conviction that he aided and abetted Wilson in the attempted murder of Fielding; (3) insufficiency of the evidence to support the finding that the shooting of Fielding was premeditated; (4) insufficient evidence to support the street gang enhancement; (5) insufficiency of the evidence to support the finding that the shooting of Ciancio was premeditated; and (6) his detention by the police was unlawful and

---

[3] *Wilson*, 2006 WL 3004206 at *1-2.

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986) (a shorthand reference to the procedure under which a prosecutor's peremptory strikes of potential jurors is challenged on the basis that the strikes are being made on a discriminatory basis, *i.e.*, because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds).

evidence resulting from that detention should have been suppressed.  Respondent asserts no affirmative defense.[5]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

---

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404–06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70–75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678–79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

In applying this standard, this court reviews the last reasoned decision by the state court,[15] which in this case was that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

---

[10] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

by clear and convincing evidence.[16]  This presumption applies to state trial courts and appellate

courts alike.[17]

## IV.  DISCUSSION

To avoid undue repetition, the court has divided the six grounds raised into three groups:

the *Batson* claim (Ground 1); the insufficiency of the evidence claims (Grounds 2, 3, 4, and 5);

and the Fourth/Fifth Amendment claim (Ground 6).

## A. *Batson* Claim.

During jury selection, the prosecutor peremptorily excused two potential jurors of

African-American heritage.  Lopez's trial counsel raised a *Batson* challenge, which the trial

court, after requiring the prosecution to explain the basis for the excusals, denied.  Lopez argues

in his first ground that the prosecutor improperly excused the two African-American jurors

because of their race, not for any race-neutral legitimate reason.  The California Court of Appeal

rejected Lopez's arguments, holding:

> Wilson contends the trial court erred by ruling that the prosecution did not
> use peremptory challenges in an unconstitutionally discriminatory way.  Lopez
> joins in the contention.  We conclude that the trial court did not err.
> "[P]eremptory challenges may not be used to remove prospective jurors
> solely . . . because they are members of an identifiable group distinguished on
> racial, religious, ethnic, or similar grounds."  (*People v. Johnson* (1989) 47 Cal.3d
> 1194, 1215 (*Johnson*).)  When a defendant believes the prosecutor is using
> peremptory challenges to remove prospective jurors solely on the basis of a
> presumed group bias, the defendant must timely object and make a prima facie
> showing of unlawful discrimination.  (*People v. Wheeler* (1978) 22 Cal.3d 258,
> 280 (*Wheeler*); see also *Batson v. Kentucky* (1986) 476 U.S. 79, 96-97 [90
> L.Ed.2d 69, 87-88] (*Batson*).)

---

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

"Once a prima facie case has been shown, the burden shifts to the other party to come forward with an explanation that demonstrates a neutral explanation related to the particular case to be tried." (*Johnson, supra,* 47 Cal.3d at p. 1216.)   As long as the proffered nondiscriminatory justification is genuine and neutral, it "may range from the obviously serious to the apparently trivial, from the virtually certain to the highly speculative." (*Wheeler, supra,* 22 Cal.3d at p. 275.)

"If the trial court makes a 'sincere and reasoned effort' to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.  In such circumstances, an appellate court will not reassess good faith by conducting its own comparative juror analysis.  Such an approach would undermine the trial court's credibility determinations and would discount '"the variety of [subjective] factors and considerations,"' including 'prospective jurors' body language or manner of answering questions,' which legitimately inform a trial lawyer's decision to exercise peremptory challenges.  [Citations.]" (*People v. Montiel* (1993) 5 Cal.4th 877, 909.)

"[T]he proper focus of a *Batson/Wheeler* inquiry, of course, is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, not on the objective *reasonableness* of those reasons." (*People v. Reynoso* (2003) 31 Cal.4th 903, 924 (*Reynoso* ), italics in original.)  "We give great deference to the trial court in distinguishing bona fide reasons from sham excuses." (*People v. Turner* (1994) 8 Cal.4th 137, 165.)  The proper function of review is to determine whether the trial court's conclusion, that the prosecutor's subjective race-neutral reasons for exercising the peremptory challenges at issue were sincere and that defendants failed to sustain their burden of proving unlawful discriminatory intent, is supported by the record when considered under the applicable deferential standard of review. (*Reynoso, supra,* at p. 924.)

During jury selection, the prosecution used peremptory challenges to excuse two African-American women as prospective jurors.  When both defendants objected on *Wheeler/Batson* grounds, the trial court found the defendants had made a prima facie case and asked the prosecutor for an explanation.  The prosecutor responded that he excused the two prospective jurors because of their backgrounds in working with indigent people and foster care, which in the prosecutor's opinion could indicate they would sympathize with the defendants.

Prospective juror L. had been arrested a year before for driving under the influence.  She felt she was treated fairly.  She was formerly a secretary in a pro bono legal office in Alabama, giving assistance to indigent clients in family court matters.  She currently works for a state agency that regulates private post-secondary schools.

Prospective juror M. is a program manager and teacher at St. Patrick's Day Care Center in Sacramento, which provides subsidized day care for low-income families and foster care.  She formerly taught in an after-school program.

The prosecutor stated that he believed prospective jurors L. and M. would be sympathetic towards the defendants because of the defendants' gang affiliation and the tendency of gangs to include members who come from lower socioeconomic backgrounds and are unable to pay for services, such as day care and legal representation.  He noted that he challenged all jurors with that type of background.  The prosecutor explained:  "I don't want them [the jurors] in a position where they are identifying these defendants with other kids that they have worked with and thinking, geez, I wonder what made them go wrong?  I feel bad for them, those types of feelings of sympathy."

The trial court found the prosecutor's explanation was "genuine" and "credible":  "I think that [the prosecutor's] record that he has made that he is very concerned that people who have had these kinds of occupations, either currently or in the past, may unduly identify with the defendants in this case, rooting for the underdog, so to speak."  The court therefore denied the motion.

On appeal, the defendants assert the prosecutor's explanation was "pretextual" because the trial court instructed the jury it could not let sympathy interfere with its decision.  This assertion is frivolous.  The prosecutor is entitled to use peremptory challenges for any reason not prohibited by the constitution.  Here, the reason given was proper and was found to be credible by the trial court.  The defendants also complain that the two prospective jurors said nothing to betray possible sympathy for the defendants, and sympathy for gang members does not logically flow from the work engaged in by the prospective jurors.  This argument disregards the proper *Wheeler/Batson* standard which commands the trial court and us to consider the subjective genuineness, not the objective reasonableness, of the prosecutor's nondiscriminatory reasons for excusing prospective jurors.

The trial court gave the *Wheeler/Batson* motion full consideration, asking for an explanation from the prosecutor and analyzing that explanation for the benefit of the defendants and the record.  While we accord great deference to the trial court's decision, it requires no stretch of reasoning at all to conclude the trial court did not err in denying the motion.[18]

The *Batson* framework consists of three steps.  (1) A defendant raising a *Batson* claim must establish a *prima facie* case of discrimination.  (2) Once a *prima facie* case of discrimination is established, the burden of offering race-neutral reasons for the strikes shifts to the prosecutor.  (3) After the prosecutor offers race-neutral reasons, the trial court has the duty to

---

[18] *Wilson*, 2007 WL 3004206 at *2-4.

MEMORANDUM DECISION
*Lopez v. Walker*, 2:08-cv-00598-JWS                    8

determine if defendant has established purposeful discrimination.[19]  In this case the Sacramento County Superior Court and the California Court of Appeal clearly followed the proper procedure.  Lopez contends the evidence demonstrated that the prosecutor excused the African-American jurors because of race, not any legitimate reason.  Lopez does not, however, identify what evidence supports this purely conclusory statement.  Nor does Lopez indicate how, or in what manner, the decision of the California Court of Appeal is erroneous.  Lopez has the burden of establishing a constitutional violation by a preponderance of the evidence.  This burden Lopez has failed to shoulder.

Consequently, on the record before it, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Lopez's case within the scope of *Andrade-Williams-Schriro*.  Lopez is not entitled to relief under his first ground.

**B.  Sufficiency of the Evidence Claims**.

As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[19] *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).

[20] 28 U.S.C. § 2254(d).

beyond a reasonable doubt."[21]  This court must, therefore, determine whether the decision of the California court unreasonably applied *Jackson*.

Lopez misperceives the role of a federal court in a habeas proceeding challenging a state court conviction.  This court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[22] Lopez bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous.[23]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[24]  Consequently, although the sufficiency of the evidence review by this court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[25]  This court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[26]  A fundamental principle of our federal system is "that a state

---

[21] *Jackson v. Washington*, 443 U.S. 307, 319 (1979) (emphasis in the original).

[22] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[23] 28 U.S.C. § 2254(e)(1).

[24] *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[25] *Jackson*, 443 U.S. at 324 n.16.

[26] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[27]  This principle applied to federal habeas review of state convictions long before AEDPA.[28]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[29]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[30]  This is especially true where the highest court in the state has denied review of the lower court's decision.[31]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[32]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[33]  It is through this lens that this court must view Lopez's second, third, fourth, and fifth grounds.

---

[27] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[28] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[29] *See Bradshaw*, 546 U.S. at 76–78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[30] *See Hicks v. Feiock,* 485 U.S. 624, 629–30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[31] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[32] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[33] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

<u>Ground 2:  Fielding Shooting (Aiding and Abetting)</u>.

Lopez, citing several California cases, argues that there was a lack of "substantial"

evidence to support his conviction.  The California Court of Appeal rejected Lopez's arguments,

holding:

> Lopez contends there was insufficient evidence he aided and abetted in the attempted murder of Fielding. We disagree.
>
> "In reviewing the sufficiency of the evidence on appeal, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)
>
> "An aider and abettor is one who acts 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)  Neither mere presence at the scene of a crime, nor the failure to take steps to prevent a crime, is alone sufficient to establish that a person is an aider and abettor.  Such evidence may, however, be considered together with other evidence in determining that a person is an aider and abettor. (*Pinell v. Superior Court* (1965) 232 Cal.App.2d 284, 287.) "  (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460, italics in original.)
>
> "When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime [citation], the aider and abettor must share the specific intent of the perpetrator.  By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime.  [Citation.]  Rather, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.  [Citations.]" (*People v. Beeman, supra,* 35 Cal.3d at p. 560, italics omitted.)
>
> Lopez bases his argument solely on what happened inside the residence. He notes that he tried to go to sleep on the couch and Fielding objected.  He also notes that he asked for a glass of water and, when Fielding told him to get it himself, he did.  While he was getting the glass of water, Wilson shot Fielding. Lopez, looking "dumb" and "ignorant" (Fielding's words) and "highly intoxicated" (an officer's observation when Lopez was arrested), did not personally harm Fielding.  Relying on his summary of the events, Lopez contends there was insufficient evidence he (1) knew Wilson intended to attempt murder,

(2) intended to aid in Fielding's murder, and (3) engaged in any act to aid Wilson in Fielding's murder.  In making his argument that the evidence was insufficient, Lopez fails to draw any inferences the jury was free to draw from the facts.

The prosecution presented evidence concerning gangs, in general, and the East Side Piru Bloods, the defendants' gang.  Wilson and Lopez were both validated members of the East Side Piru Bloods criminal street gang since 2001.  The primary activities of the East Side Piru Bloods are to sell narcotics and control the neighborhood, including those in the neighborhood who are not gang members, through violence and fear.  They claim as their territory the area in which the attempted murders were committed.  Respect, resulting from fear and intimidation, is important to gang members, and a showing of disrespect is highly offensive.  Gang members do not resolve conflicts through legal means but instead through violence and intimidation, including intimidation of witnesses.

Considering the gang evidence and the evidence concerning the night of the incidents, along with inferences the jury could reasonably draw, the evidence was sufficient to support findings by the jury that Lopez knew Wilson intended to kill Fielding and that Lopez not only intended to aid Wilson but aided Wilson in fact.

Wilson and Lopez knew of Fielding's presence within their gang territory because they had been at the residence where Fielding was staying earlier in the evening.  After they attempted to murder Ciancio, simply for being in their territory and failing to show the respect Wilson and Lopez demanded, Wilson and Lopez returned to the residence where they had seen Fielding.  Lopez gave Wilson the gun.  From these circumstances, it can be inferred that Wilson and Lopez, already engaged in violent gang activities that evening, intended to continue those activities by killing Fielding, who was not a member of their gang.  The murder would serve the purposes of protecting their territory and elevating their standing within the gang by the use of murderous violence.  The conduct of Wilson and Lopez, once they reached the residence, supports this inference.  They loudly demanded admission.  Inside, they demanded Fielding's respect, trying to get him to get Lopez a drink of water and allow Lopez to use his pillow.  When Fielding did not give that respect, they split up, thus attempting to divert Fielding's attention away from the fact that Wilson was preparing the gun.  After Wilson shot Fielding six times, Lopez fled with Wilson.

Furthermore, Wilson and Lopez were seen by Fielding together in the area just before they attempted to murder Ciancio.  Therefore, Fielding was a potential witness against them.  After the Ciancio incident they returned to the residence where Fielding was staying and demanded loudly to be admitted.  The jury could infer that they returned to the residence to eliminate Fielding as a witness—a shared intent to kill Fielding.  After Wilson shot Fielding, he called to Lopez: "Come on Nigga, we're leaving."  Instead of assisting Fielding, Lopez fled the scene—evidence of his consciousness of guilt and complicity with Wilson.  The

evidence, along with reasonable inferences, supports Lopez's conviction for the attempted murder of Fielding.

There was some evidence, though not admissible as to Lopez, that Wilson told someone he shot Fielding because Fielding was dealing drugs in East Side Piru Blood territory.  The trial court instructed the jury not to consider it with respect to the prosecution of Lopez.  Lopez asserts the jury could not rely on that evidence to find he aided and abetted Wilson's attempted murder of Fielding.  We need not disagree with this assertion to conclude the evidence was sufficient, as shown above, to support Lopez's conviction for the attempted murder of Fielding.[34]

In this case, the California Court of Appeal, applying the California "substantial" test for sufficiency of the evidence, which appears to be more stringent than the *Jackson* constitutional standard, found there was sufficient evidence to support Lopez's conviction under state law as construed by the Court of Appeal.  The California Supreme Court declined to review that decision.  As noted above, this court must assume that the California Court of Appeal properly applied state law, particularly in light of the denial of review by the California Supreme Court.  Consequently, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]  Nor can this Court find that the state court unreasonably applied *Jackson* to the facts of Lopez's case within the scope of *Andrade-Williams-Schriro*.  Lopez is not entitled to relief under his second ground.

---

[34] *Wilson*, 2006 WL 3004206 at *5–7.

[35] 28 U.S.C. § 2254(d).

Ground 3: Fielding Shooting (Premeditation).

In his third ground, Lopez contends that there was insufficient evidence of premeditation and deliberation to support the verdict of attempted first degree murder of Fielding.  More specifically, Lopez argues that there was a lack of evidence of planning, and the only evidence of motive was inadmissible as against him.  The California Court of Appeal rejected Lopez's arguments, holding:

> We likewise reject Lopez's contention that there was insufficient evidence he premeditated and deliberated with respect to the attempted murder of Fielding. Fellow gang members, Wilson and Lopez, went to the residence where Fielding was staying.  They observed him there, then they left.  While they were gone, they asserted their territorial dominance over someone (Ciancio) they did not recognize as a fellow gang member.  They chased him down and attempted to murder him. They then returned to the residence where Fielding was staying.  En route Lopez gave Wilson the gun.  They loudly demanded admission, then they acted to divert Fielding's attention while Wilson prepared the gun.  Wilson shot Fielding six times without warning.  Wilson *and* Lopez then fled, thinking their job (killing Fielding) was done.  The evidence supported the jury's determination that Lopez's attempted murder of Fielding was premeditated and deliberate.[36]

As was the case with the second ground, the California Court of Appeal, applying the California test for sufficiency of the evidence, found there was sufficient evidence to support Lopez's conviction under state law as construed by the Court of Appeal and the California Supreme Court denied review.  As with Lopez's second ground, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the

---

[36] *Wilson*, 2006 WL 3004206 at *8.

evidence presented in the State court proceeding."[37]   Nor can this Court find that the state court unreasonably applied *Jackson* to the facts of Lopez's case within the scope of *Andrade-Williams-Schriro*.   Lopez is not entitled to relief under his third ground.

Ground 4: Street Gang Enhancement.

Lopez contends there was insufficient evidence that he participated in the shooting of Fielding "for the benefit of, at the direction of, or in association with, any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."[38]

> Lopez also asserts that the evidence was insufficient to support the criminal street gang enhancement associated with the attempted murder of Fielding.  As with the prior argument, however, Lopez fails to credit the reasonable inferences the jury could have drawn.
> Lopez contends there was no evidence he aided and abetted in the attempted murder of Fielding to benefit a gang or with the specific intent to promote, further, or assist in criminal conduct by gang members.  (Pen.Code, § 186.22, subd. (b)(1).)  To the contrary, the evidence supports the inferences that Wilson and Lopez were out doing the work of the gang on the night of the incidents—intimidating and shooting Ciancio and doing likewise with Fielding, also trying to eliminate a witness that could place them together and in the area of the Ciancio shooting.  That these acts were done for the benefit of their gang is a conclusion easily drawn from their gang membership and their activities, which were typically the activities of a gang member.  The same evidence supports a finding that Lopez specifically intended to promote, further, or assist in criminal conduct by a gang member.  He gave Wilson the gun, barged into the residence with Wilson, helped divert Fielding's attention, and fled after the shooting.  He therefore assisted in Wilson's criminal conduct.[39]

In this case, the California Court of Appeal found sufficient evidence to support imposition of the gang enhancement under state law as the Court of Appeal construed state law,

---

[37] 28 U.S.C. § 2254(d).

[38] Cal. Pen. Code § 187.22(b)(1); *People v. Gardeley*, 927 P.2d 713, 725 (Cal. 1996).

[39] *Wilson*, 2006 WL 3004206 at *6–7.

and the California Supreme Court denied review.  Normally, this would end the matter in

Respondent's favor.  In this case, however, the court's inquiry does not end there.  This court

must also consider the effect of two decisions by the Court of Appeals for the Ninth Circuit, by

which this court is bound,[40] construing California Penal Code § 186.22(b)(1):  *Briceno v.*

*Scribner*[41] and *Garcia v. Carey*.[42]

   In *Garcia*, as in this case, the California Court of Appeal affirmed Garcia's conviction in

an unpublished reasoned decision, and the California Supreme Court summarily denied review in

a "postcard denial."[43]  As framed by the Ninth Circuit, the issue presented and decided in *Garcia*

was whether the evidence supported the jury's finding of the required "specific intent to

'promote, further assist in' other criminal activity of the gang apart from the robbery of

conviction."[44]  After reviewing the evidence in *Garcia*, the Ninth Circuit found:

>   There is nothing in this record, however, that would support an inference
> that Garcia robbed Bojorquez with the specific intent to facilitate other criminal
> conduct by the E.M.F.  The evidence indicates that Garcia was a gang member
> and that he robbed Bojorquez in an area known to be in the heart of the gang's
> "turf."  Detective Hernandez, the gang expert, testified that the gang was "turf
> oriented," and he described three other robberies committed by E.M.F. members
> in El Monte during the few months prior to Garcia's offense.[FN6]  But there is no
> evidence indicating that this robbery was committed with the specific purpose of
> furthering other gang criminal activity, and there is nothing inherent in the
> robbery that would indicate that it furthers some other crime.  There is nothing on
> the record that connects the "turf-oriented" nature of the gang with the
> commission of robberies generally, or, more importantly, with the commission of
> this robbery in particular.  There is no testimony that protection of turf enables

---

[40] *See Miller v. Gammie*, 335 F.3d 889, 893, 899 (9th Cir. 2003) (en banc).

[41] 555 F.3d 1069 (9th Cir. 2009).

[42] 395 F.3d 1099 (9th Cir. 2007).

[43] *Garcia*, 395 F.3d at 1103 n.7.

[44] *Id.* at 1100–01.

any other kind of criminal activity of the gang.  The expert's testimony is singularly silent on what criminal activity of the gang was furthered or intended to be furthered by the robbery of Bojorquez.[45]

> FN6. These robberies helped to qualify El Monte Flores as a "criminal street gang," *see* CAL. PENAL CODE § 186.22(f), that was engaged in a "pattern of criminal activity," *see id.* § 186.22(e).

The Ninth Circuit determined that, because of this lack of evidentiary support for the specific intent to further other gang criminal activity element, the decision of the California Court of Appeal was an unreasonable application of *Jackson*.[46]  The Ninth Circuit panel went on to state:

A decision of the California Supreme Court upholding a gang enhancement provides an example of the kind of evidence that can support a finding of the requisite specific intent.  In *People v. Gardeley,* 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713 (1996), an expert testified that an assault of the type involved there "was a 'classic' example of gang-related activity"; the expert explained "that criminal street gangs rely on such violent assaults to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold." *Id.* at 722.  The California Supreme Court held that such testimony permitted the jury reasonably to conclude that the attack was committed with the necessary specific intent to further other criminal activity of the gang. *Id.*  No comparable testimony was presented in Garcia's case.

Other California cases also present examples of the kind of evidence permitting an inference of specific intent to further other criminal gang activity. *See, e.g., People v. Augborne,* 104 Cal.App.4th 362, 372-73, 128 Cal.Rptr.2d 258 (2002) (expert testified to belief that crimes were committed for promotion and assistance of criminal conduct by gang members); *In re Ramon T.,* 57 Cal.App.4th 201, 207-08, 66 Cal.Rptr.2d 816 (1997) (finding gang enhancement supported by expert evidence and unequivocal act where the attack against a police officer who had another gang member in custody was committed in order to assist the gang member's escape); *California v. Ortiz,* 57 Cal.App.4th 480, 484-85, 67 Cal.Rptr.2d 126 (1997) (finding sufficient evidence to support a gang enhancement where expert evidence was that a robbery and murder were committed with the specific intent of framing a rival gang for the crimes).[47]

---

[45] *Id.* at 1103.

[46] *Id.* at 1104.

[47] *Id.*

In *Briceno*, the Ninth Circuit reaffirmed its decision in *Garcia* despite the fact that two California Appellate Court decisions held that *Garcia* misinterpreted California law.

> In *Garcia,* the defendant, a known gang member, robbed the victim "in an area known to be in the heart of the gang's 'turf.'" 395 F.3d at 1103. Although a police expert testified that the defendant's gang was "turf-oriented," we held that there was insufficient evidence to warrant an enhanced sentence under § 186.22(b)(1) because there was no evidence, aside from the gang expert's generic testimony, "that would support an inference that Garcia robbed [the victim] with the specific intent to facilitate other criminal conduct by the [gang]." *Id.* Aside from evidence of Garcia's gang membership, the record was "singularly silent" as to "what criminal activity of the gang was . . . intended to be furthered by the robbery." *Id.* We concluded that this lack of evidence triggered application of the *Jackson* standard, as "[w]ithout this evidentiary link, it is unreasonable to conclude that a rational jury could find that Garcia committed [this robbery] with the specific intent to facilitate other gang crimes. There was simply a total failure of proof of the requisite specific intent." *Id.* at 1104.
>
> The State urges us to disregard *Garcia,* citing two California appellate court decisions holding that *Garcia* misinterpreted California law. *See People v. Hill,* 142 Cal.App.4th 770, 47 Cal.Rptr.3d 875, 877 (2006); *People v. Romero,* 140 Cal.App.4th 15, 43 Cal.Rptr.3d 862, 865 (2006). *Romero* and *Hill* both held that "the specific intent element is satisfied if [the defendant] had the specific intent to 'promote, further, or assist' [a fellow gang member] in [any criminal conduct]." *Romero,* 43 Cal.Rptr.3d at 866; *Hill,* 47 Cal.Rptr.3d at 877. The State argues that we are bound by this construction of the statute, under which the gang enhancements are warranted so long as Briceno intended to assist Landin in the commission of the crime and knew that Landin was a gang member.[48]

The *Briceno* court held that to the extent that the California Supreme Court provided an authoritative interpretation of § 186.22(b) in *Gardeley*, it suggests that the California Supreme Court would not adopt the State's understanding of *Romero* and *Hill*. In the absence of an intervening decision of a higher authority, this court is bound by *Garcia* and *Briceno*.[49]

---

[48] *Briceno*, 555 F.3d at 1079–80 (footnote omitted).

[49] *Gammie*, 335 F.3d at 899. The court does note that every California Court of Appeal decision since *Briceno* has agreed that *Briceno* and *Garcia* misinterpreted California law with respect to whether the crime must be committed in furtherance of some *other criminal activity*, and declined to follow them. Illustrative of this is the published decision in *People v. Vazquez*, 100 Cal. Rptr. 3d 351, 356–57 (Cal. App. 2009), *review denied*.

In this case, unlike *Garcia* and *Briseno*, there was expert testimony comparable to that in *Gardeley* and the other California appellate cases cited in *Garcia*.[50]  From this evidence a rational jury could reasonably find that this promoted the activities of the East Side Piru Bloods, which included narcotics sales and control of the neighborhood, by establishing its dominance and exclusivity within its "turf."[51]  Given the distinguishing characteristics of the evidentiary basis in this case in comparison to *Garcia* and *Briseno*, unlike the Ninth Circuit in those two

---

In *Briseno, supra,* and *Garcia, supra,* the Ninth Circuit held that the specific intent requirement of section 186.22, subdivision (b) is not satisfied by evidence of a defendant's gang membership alone, and instead requires some evidence, aside from a gang expert's "generic testimony," that supports an inference that the defendant committed the crime "'with the specific intent to facilitate other criminal conduct by the [gang].'"  (*Briseno, supra,* 555 F.3d at p. 1079, quoting *Garcia, supra,* 395 F.3d at p. 1103.)  Among other things, according to the Ninth Circuit, the statute requires evidence describing "'what criminal activity of the gang was . . . intended to be furthered'" by the crime.  (*Id.,* quoting *Garcia, supra,* at p. 1103.)

While our Supreme Court has not yet reached this issue, numerous California courts of appeal have rejected the Ninth Circuit's reasoning.  As our colleagues noted in *People v. Romero* (2006) 140 Cal.App.4th 15, 19, 43 Cal.Rptr.3d 862:  "By its plain language, the statute requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang members,' rather than *other* criminal conduct. (§ 186.22, subd. (b)(1), italics added.)"  Thus, if substantial evidence establishes that the defendant is a gang member who intended to commit the charged felony in association with other gang members, the jury may fairly infer that the defendant also intended for his crime to promote, further or assist criminal conduct by those gang members.  (*Id.* at pp. 19-20, 43 Cal.Rptr.3d 862.)

Like the *Romero* court, we reject the Ninth Circuit's attempt to write additional requirements into the statute.  It provides an enhanced penalty where the defendant specifically intends to "promote, further, or assist in any criminal conduct by gang members."  There is no statutory requirement that this "criminal conduct by gang members" be distinct from the charged offense, or that the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing.

In each unreported decision in which review was sought, the California Supreme Court denied review.

[50] *Infra*, p. 13 (California Court of Appeal summary of testimony of gang expert).

[51] *See Gardeley*, 927 P.2d at 722; *see also Briseno*, 555 F.3d at 1081 (referring to protecting a gang "turf") (citing, *inter alia*, *People v. Villalobos*, 51 Cal. Rptr. 3d 678, 681 (Cal. App. 2007) (crime committed on gang turf); *People v. Romero*, 43 Cal. Rptr. 3d 862, 863–64 (Cal. App. 2006).

cases, this court cannot say that the decision of the California Court of Appeal in this case was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[52] Nor can this court find that the California Court of Appeal unreasonably applied *Jackson* to the facts of Lopez's case within the scope of *Andrade-Williams-Schriro*. Lopez is not entitled to relief under his fourth ground.

<u>Ground 5: Ciancio Shooting (Premeditation)</u>.

In his fifth ground, as he did in this third ground with respect to the shooting of Fielding, Lopez argues that there was insufficient evidence of premeditation and deliberation to support a finding that the shooting of Ciancio constituted attempted first-degree murder under California law. The California Court of Appeal rejected Lopez's arguments, holding:

> Wilson and Lopez contend the evidence was insufficient for the jury to conclude they premeditated and deliberated with respect to the attempted murder of Ciancio. The contention is without merit.
> ***
> Wilson and Lopez first assert that evidence of planning was insubstantial. To make this assertion, they rely on the prosecutor's argument. "The prosecution contended," state the defendants, "that Wilson and Lopez ran into Ciancio and identified themselves as gang members. A fight ensued between Ciancio and Lopez. Ciancio won the fight, injuring Lopez's face in several places. Lopez took out a handgun and fired a single shot at Ciancio." The defendants call this prosecutorial argument the "facts" and then attempt to show that these "facts" do not support a finding that they planned the attempted murder of Ciancio. As the trial court informed the jury, and any law school graduate knows, attorneys' statements are not evidence. We review the evidence, not arguments, when determining whether the evidence is sufficient to support a conviction.
> The actual evidence was considerably more damning than the defendants concede. Wilson and Lopez, in the dark of night, issued a gang challenge by

---

[52] 28 U.S.C. § 2254(d).

asking Ciancio where he was from and whether he was from a rival gang.  They pursued Ciancio, even though he was trying to leave the situation, and Lopez reached for the loaded handgun in his waistband.  When Ciancio struck at Lopez in selfdefense, Wilson yelled, "Shoot that mother fucker."  The evidence supports a finding Wilson and Lopez planned the attempted murder even before Ciancio struck at Lopez, accusing Ciancio of rival gang membership and chasing him down with a loaded handgun, which Lopez drew.  Furthermore, planning took place after Ciancio struck at Lopez when Wilson called on Lopez to shoot Ciancio, who was fleeing.

Wilson and Lopez also assert there was no evidence of motive and that the manner in which they tried to kill Ciancio did not support an inference they had a preconceived design.  The motive was to benefit the street gang by violence and intimidation.  The preconceived design unfolded when, acting as fellow gang members on their own turf and with a loaded gun, they chased down someone they suspected of being in a rival gang.  Even if considered only after Ciancio struck at Lopez, the preconceived design was to kill someone who showed disrespect.  As noted by the Supreme Court, such conception of a killing can happen rapidly, especially when the defendants have decided in advance, as gang membership teaches them, to respond violently in such circumstances.[53]

In this case, the California Court of Appeal, applying the California test for sufficiency of the evidence, which appears to be more stringent than the *Jackson* constitutional standard, found there was sufficient evidence to support Lopez's conviction under state law as construed by the Court of Appeal and the California Supreme Court denied review.  As with Lopez's second and third grounds, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[54]  Nor can this court find that the state court unreasonably applied the correct legal principle to the facts

---

[53] *Wilson*, 2006 WL 3004206 at *7–8.

[54] 28 U.S.C. § 2254(d).

of Lopez's case within the scope of *Andrade-Williams-Schriro*.  Lopez is not entitled to relief

under his fifth ground.

### C.  Fourth/Fifth Amendment Claim.

In his sixth ground Lopez contends that the police officer lacked sufficient probable

cause to detain and question him in violation of his Fourth and Fifth Amendment rights.

Consequently, Lopez argues that all the evidence that resulted from that detention, including the

statements he made, should have been suppressed.[55]

Lopez's Fourth Amendment argument is foreclosed by the Supreme Court holding in

*Stone* that "where the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered

through an illegal search or seizure was introduced at trial.[56]  The Ninth Circuit has made it clear

that all *Stone* requires is that the State provide a state prisoner a fair and full opportunity to

litigate his Fourth Amendment claim.[57]  "The relevant inquiry is whether petitioner had the

opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was

correctly decided."[58]  In this case, Lopez was provided a fair and full opportunity to present his

claims.  Lopez raised the issue in a pretrial motion, the trial judge held a hearing on the issue at

which he was allowed to present evidence and examine witnesses, and the trial court made

---

[55] Although he cites the Fifth Amendment, Lopez did not seek before the state courts to suppress his statements under *Miranda v. Arizona*, 384 U.S. 436 (1966), nor does he seek suppression under *Miranda* in his petition to this court.

[56] *Stone v. Powell*, 428 U.S. 465, 482 (1976).

[57] *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

[58] *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

factual findings.  That is all that is constitutionally required.[59]  Lopez is not entitled to relief under his sixth ground.

### V.  CONCLUSION AND ORDER

Lopez is not entitled to relief under any ground raised in the petition.  Accordingly,

**IT IS ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that the court declines to issue a Certificate of Appealability.[60]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[61]

The Clerk of the Court will please enter  final judgment accordingly.

Dated:  April 19, 2010.

/s/ John W. Sedwick
United States District Judge

---

[59] *Moorman*, 426 F.3d at 1053.

[60] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[61]*See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.